In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00074-CR


______________________________




ANGELA DAWN WALDROP, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21330




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On December 11, 2004, Angela Dawn Waldrop called the Bonham Police Department (BPD)
reporting that her two daughters made allegations that Waldrop's former husband (who was the
biological father of one of the girls) had sexually assaulted the girls. Officer Joe White from the
BPD met with Waldrop and her daughters and transported them to the police station. When White
learned that some of the allegations related to actions outside the city limits but within Fannin
County, he contacted the Fannin County Sheriff's Office to, as he testified, "take a report also."
Deputy Rick Milner of the sheriff's office responded. 

 At the end of the initial meeting on December 11, both White and Milner completed reports
on the matter and attached Waldrop's written statement to their respective reports. Milner informed
Waldrop that the girls would have to undergo interviews at the Child Advocacy Center (CAC) and
would have to undergo physical examinations. Milner also advised Waldrop to contact one of the
investigators at the sheriff's office. On December 13, Waldrop did just that, speaking to Lieutenant
David Perkins of the sheriff's office and turning over to him a microcassette recording of the girls'
accounts of the sexual abuse. 

 Perkins listened to the audiotape and suspected that the girls were coached in making their
statements based on indications that the girls were reading prepared material and that Waldrop could
be heard coaching them on the content of the statement. Perkins then contacted BPD investigator
Wendell Bockman regarding the investigation and the audiotape Waldrop had given to Perkins. 
Despite the officers' suspicions, both agencies continued their investigation into the matter, and the
CAC conducted forensic interviews of the girls. The interviews confirmed that the allegations were
false. In fact, the girls denied that their father had sexually abused them and explained that their
"real" mother, "Angie," made them say several lies about their family on the tape recorder. 

 Based on Waldrop's production and presentation of the recording of the false allegations, the
State charged her with fabricating evidence with the intent to affect the outcome of the investigations
of both the BPD and the sheriff's office. Waldrop was convicted of two counts of fabricating
evidence and sentenced to ten years' confinement for each offense, the sentences running
concurrently. See Tex. Penal Code Ann. § 37.09(a)(2) (Vernon 2003). In this case, she appeals
her conviction related to the Fannin County Sheriff's Office's investigation of the allegations that her
former husband sexually abused her daughters. (1) She limits her argument to the legal and factual
sufficiency of the evidence to support the element that an investigation was "pending" when she
presented the audiotape and to the factual sufficiency of the evidence to show that she knew the
allegations were false.

 We first look at the essential elements of the offense of fabricating evidence. Then, after
examining the mandatory steps involved in investigating allegations of sexual abuse, we conclude
that the evidence was legally and factually sufficient to support a finding that an investigation of the
allegation was "pending" when Waldrop presented the audiotape. Further, we examine the record
for evidence that Waldrop reasonably believed the allegations to be true, find no such evidence, and
conclude that the evidence is factually sufficient to support a finding that Waldrop knew the
allegations of sexual abuse were false. Based on those conclusions, we affirm the conviction.

(1) Elements of the Offense of Fabricating Evidence

 A person commits an offense if, knowing that an investigation or official proceeding is
pending or in progress, he or she "makes, presents, or uses any record, document, or thing with
knowledge of its falsity and with intent to affect the course or outcome of the investigation or official
proceeding." Tex. Penal Code Ann. § 37.09(a)(2). In this appeal, Waldrop challenges her
conviction related to the Fannin County Sheriff's Office's investigation on two bases: that no
investigation was "pending" when she delivered the audiotape and that she did not know of the
falsity of the allegations on the audiotape.

 In reviewing the legal sufficiency of the evidence to support a finding of these elements, we
view the relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we view
all the evidence in a neutral light and determine whether the evidence supporting the verdict is so
weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and
preponderance of the evidence is contrary to the verdict. See Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

(2) Legally and Factually Sufficient Evidence Supports a Finding that an Investigation Was
Pending

 

 Waldrop points to Perkins's testimony that he did not begin his part in the investigation until
December 13, the day Waldrop gave him the audiotape, to support her contention that the evidence
failed to show an investigation was pending when she gave him the audiotape. We disagree and look
to the provisions that concern the investigation of reports of child abuse to conclude that an
investigation was, in fact, "pending" when Waldrop presented the audiotape.

 (a) Investigation of Reported Abuse by Parent or Caretaker

 The timing and procedure to be followed in the investigation of allegations that a caretaker
has sexually abused a child are largely dictated by the Texas Family Code and the Texas Code of
Criminal Procedure. Both Codes call for a joint investigation by the appropriate law enforcement
agency and the Texas Department of Family and Protective Services (TDFPS). The Texas Family
Code calls for a "prompt and thorough investigation" of allegations of sexual abuse at the hands of
a person responsible for "a child's care, custody, or welfare." Tex. Fam. Code Ann. § 261.301(a)
(Vernon Supp. 2006). (2) A police officer who takes a report of such allegations must immediately
contact the TDFPS. See Tex. Fam. Code Ann. § 261.105(a) (Vernon Supp. 2006). Milner, one of
the two officers who initially took the report of abuse from Waldrop December 11, testified that he
called the Child Protective Services (CPS) (3) hotline to report the allegations of sexual abuse by the
girls' father. CPS must then assign the case a priority and begin its part in the investigation within
the appropriate time frame. (4) The joint investigation, at this point, may include a visit to the child's
home, an interview, and a medical, psychological, or psychiatric examination of the child. See Tex.
Fam. Code Ann. § 261.302(a) (Vernon Supp. 2006).

 (b) Evidence of Compliance with Investigative Procedure

 CPS Investigative Supervisor Ron Hamilton testified that CPS received the report of sexual
abuse December 12 and promptly scheduled interviews of the girls at the CAC (5) December 13. 
Representatives from the Fannin County Sheriff's Office, BPD, CPS, and the CAC then observed
the interviews of the girls, where it became clear that the allegations were false. The forensic
interviews of the girls were conducted within twenty-four hours of CPS's receipt of the report.

 The required steps in the investigation of the allegations of sexual abuse were set into motion
when Waldrop made her initial report to White and Milner December 11. On December 13,
representatives from the appropriate entities were all involved and had taken the steps required by
the Texas Family Code and the Texas Code of Criminal Procedure to conduct a joint "prompt and
thorough investigation" of this type of allegation. It was on the very same day, and only hours before
the interviews were to be conducted, that Waldrop brought in the audiotape. 

 At the time Waldrop turned over the audiotape, the law mandated that the investigation was
pending. That is to say, the investigation of the sexual abuse allegations was "pending" the moment
Waldrop filed her initial report with White and Milner. In this case, the record shows that the parties
had taken the appropriate steps to initiate the required joint investigation at the time Waldrop
presented the audiotape. Evidence--that Waldrop made the December 11 report, that Milner
reported the allegations to the CPS hotline as required, and that the joint investigation was scheduled
to begin with interviews of the girls at the CAC December 13--is legally sufficient to conclude that
the investigation was "pending" when Waldrop presented the audiotape.

 Evidence that Perkins was not personally involved in the investigation until December 13
is not sufficient to conclude that no investigation was pending when Waldrop turned over the
audiotape to him. Perkins's personal role in the investigation is not the relevant focus. To the
contrary, the law called for a "prompt and thorough" joint investigation the moment Waldrop made
the initial report. The nature of this investigation necessarily involves several people. The steps had
been taken to schedule the interview, which is a portion of the mandatory investigation of these
allegations. The record does show that Waldrop presented the audiotape before the interview and
before any other of the several investigative steps that would have occurred had the interviews not
conclusively shown that the allegations were false; the actual investigation, in other words, was not
quite underway when Waldrop presented the audiotape. Nevertheless, the investigation became
mandatory and, thus, became "pending" when Waldrop made her report of the sexual abuse
allegations to White and Milner. Therefore, the evidence is factually sufficient to conclude that the
mandatory investigation was pending when she presented the audiotape of false allegations. 

(3) Factually Sufficient Evidence Supports Finding that Waldrop Knew the Allegations Were
False


 From the audiotape, the CAC interviews, and the testimony, the jury could have reasonably
inferred that Waldrop felt the need to coach and prompt the younger daughter and to write down a
scripted version of alleged events because Waldrop knew the allegations to be false. See Waldrop
v. State, cause number 06-06-00173-CR. It was reasonable to conclude that, had the allegations been
true, such instruction would likely have been unnecessary. No evidence in the record suggests that
the allegations were true or that Waldrop had reason to believe those allegations were true. We,
therefore, conclude that the evidence that Waldrop knew the allegations on the audiotape were false
is factually sufficient to support the jury's verdict. 

(4) Conclusion

 Viewing the evidence in a light most favorable to the verdict, we conclude that a rational trier
of fact could have found beyond a reasonable doubt the essential elements of the offense under
Section 37.09(a)(2) of the Texas Penal Code. The evidence demonstrates that the mandatory
"prompt and thorough investigation" of the allegations was pending when Waldrop presented the
audiotape even though one officer testified he was not personally involved until the day Waldrop
brought the audiotape. Further, the evidence does not suggest that any other individual made the
audiotape or that Waldrop reasonably could have believed the allegations to be true. Viewing this
evidence in a neutral light, we conclude that the evidence supporting the verdict is not so weak that
the verdict is clearly wrong or manifestly unjust. We overrule Waldrop's points of error.

 We affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: March 22, 2007


Do Not Publish
1. In a related appeal, Waldrop appeals her conviction for fabricating evidence with respect to
the BPD's investigation of the allegations of sexual abuse. See Waldrop v. State, cause number 06-06-00073-CR.
2. This section has been amended since December 11, 2004, but the amendments are
nonmaterial.
3. CPS is the division of the TDFPS charged with investigating reports of abuse and neglect
of children. See 40 Tex. Admin. Code Ann. § 107.1605(b)(1)(B)(i)(I).
4. Reports involving children who appear to face an immediate risk of abuse or neglect that
could result in death or serious harm are considered Priority I matters. See 40 Tex. Admin. Code
Ann. § 700.505(b)(1). CPS must initiate an investigation within twenty-four hours of receiving a
Priority I report and within ten days of receiving a Priority II report. See Tex. Admin. Code Ann.
§ 700.505(a). The prompt investigation of the allegations here suggests that CPS considered this
report a Priority I matter. 
5. According to Hamilton, victims of alleged sexual abuse are referred to the CAC. 



set forth in the order." 
          The order appointing Stanley as temporary guardian provides no such information. 
It does not specifically grant any right, or any power, or any duty, and does not specify any
imminent danger from which the person need be protected. The order concludes as
follows: "IT IS FURTHER ORDERED, that the Temporary Guardian shall have all the
powers and duties as stated in the Texas Probate Code." 
          The Probate Code, for obvious reasons, intentionally sets out no powers or duties
for a temporary guardian. It instead specifically and repeatedly requires the order to
designate the specific extent of the authority of the temporary guardian. See Bandy v. First
State Bank, 835 S.W.2d 609 (Tex. 1992). Where no authority is specifically designated,
we cannot find that the order gave the temporary guardian the authority to enter into such
a contract. In similar situations, courts have acknowledged that acts taken by a temporary
administrator, that are not specifically authorized by the order of appointment, are void. 
See id. at 615 (involving contracts entered by temporary administrators outside expressly
authorized actions set out by court's order).
          We conclude that Stanley, as temporary guardian, had no authority to contract on
behalf of Alberta and that the contingency fee contract entered into between Bennett and
Stanley cannot be enforced. Thus, the trial court did not err by denying Bennett's motion
for summary judgment. 
          Because of our determinations above, we need not address the point of error
brought by Alberta and Nelson complaining the trial court also erred by not granting their
no-evidence motion for summary judgment.
          We affirm the judgment of the trial court.



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      April 19, 2004
Date Decided:         June 8, 2004